788 P.2d 243

**Wayne Lee CUNNINGHAM, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 17812.

Court of Appeals of Idaho.

March 5, 1990.

Alan E. Trimming, Ada County Public Defender, Timothy L. Hansen, Deputy Public Defender (argued), Boise, for petitioner-appellant.

Jim Jones, Atty. Gen., James E. Leuenberger, Deputy Atty. Gen. (argued), Boise, for respondent.

WALTERS, Chief Judge.

Wayne Cunningham was convicted in the district court for Ada County of aggravated assault involving the use of a firearm. His conviction was affirmed on appeal. *State v. Metzgar*, 109 Idaho 732, 710 P.2d 642 (Ct.App.1985) (review denied).[1] In this appeal, he challenges the district court's denial of his application for post-conviction relief. He argues that the trial judge impermissibly utilized an uncertified copy of his criminal record while imposing sentence, and that he was denied effective assistance of counsel at trial. We affirm the district court's order denying Cunningham's application.

The essential facts of this case are as follows. Late one evening the victim, Diona Paden, and her roommate were hitchhiking on a busy street in Boise. A driver stopped and asked the couple if they wanted a ride. Paden and her companion entered the vehicle. Shortly thereafter the

---

1. In the caption of that appeal, the defendant was identified as "Terry Metzgar, aka Wayne Cunningham."

driver stopped the vehicle and pointed a pistol at the couple and told them to undress. After Paden had removed several articles of clothing the driver allegedly touched her chest. The driver then told the passengers to dress and handed the gun to Paden's roommate to put under the backseat of the vehicle.

Approximately one month later, Paden recognized the driver-assailant while in a Boise bar. Paden was informed by a bar patron that the man's nickname was "Scooter." Paden then notified police that the man identified as Scooter—Cunningham—was the person who earlier had assaulted her.

At his trial, Cunningham's attorney relied upon an alibi defense, and also showed inconsistencies between Paden's pretrial statements about the assault incident and her testimony at trial. Nonetheless, the jury found Cunningham guilty.

After his appeal on the merits of the conviction was unsuccessful, Cunningham applied for post-conviction relief, alleging that his trial attorney had not provided him with effective assistance of counsel and that the trial judge had abused her discretion during the sentencing hearing by considering an FBI case history, or "rap sheet," of Cunningham's past convictions. After denying the parties' cross-motions for summary judgment, the district court held an evidentiary hearing to consider the merits of Cunningham's claims. His application was subsequently denied. When the forty-two day period for filing an appeal had expired, Cunningham—represented by new counsel—filed a motion for relief from the district court's order, alleging that neither he nor his newly appointed attorney had received a copy of the court's final order denying his application.[2] The district court granted Cunningham's motion and reissued its order so that he could file a timely appeal.

I

■ As a preliminary matter, the state argues that this Court lacks jurisdiction to consider Cunningham's appeal because a district judge has no authority to reissue an appealable judgment or order simply for the purpose of permitting him to file a timely appeal. Although this is true as a general proposition, see *Spreader Specialists, Inc. v. Monroc, Inc.,* 114 Idaho 15, 752 P.2d 617 (Ct.App.1988), the argument is inapposite to this case.

Idaho Rule of Civil Procedure 77(d) states:

> Lack of notice of entry of an order or judgment does not affect the time to appeal or to file a post-judgment motion, or relieve or authorize the court to relieve a party for failure to appeal or file a post-trial motion within the time allowed, *except where there is no showing of mailing by the clerk in the court records and the party affected thereby had no actual notice.* [Emphasis added.]

In *Herrett v. Herrett,* 105 Idaho 358, 360, 670 P.2d 63, 65 (Ct.App.1983), we held that when the original time for appeal expires before an appellant receives *actual notice* of a judgment, the time for appeal begins to run anew from the date the appellant actually receives such notice. In this case, the district court conducted a hearing and was informed by Cunningham's attorney that neither he nor Cunningham had received a copy of the order before expiration of the forty-two day time limit. Although the order contained a notation of "copies" for Cunningham and the attorney, the record shows no statement that such a mailing was ever made. Furthermore, Cunningham's attorney informed the court that as soon as he discovered that the original order had been entered, he promptly filed a motion for relief from that order. These assertions were unchallenged by the prosecutor at the hearing. As a result, we must presume that the prosecutor ac-

---

**2.** The order in question denied a motion by Cunningham to amend the district judge's original order dismissing his post-conviction relief application. The forty-two day period for filing

an appeal under the Uniform Post-Conviction Procedure Act, I.C. § 19–4909, commenced when the district court filed the second order.

quiesced in the facts presented by Cunningham's attorney. Under these circumstances, we conclude that there was sufficient evidence for the judge to determine that Cunningham had not received actual notice of the order at any time before expiration of the appeal period. It was therefore within the judge's discretion to reissue her order, permitting Cunningham the right to file his appeal. *See State v. Dillard,* 110 Idaho 834, 718 P.2d 1272 (Ct.App.1986) (review denied) (judgment re-entered when attorney did not honor defendant's request for appeal).

## II

■ We now reach the merits of Cunningham's appeal. Preliminarily, we note our standard of review. A request for post-conviction relief is a special proceeding that is civil in nature. *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986). To prevail, the petitioner must prove, by a preponderance of the evidence, the allegations upon which his or her application is based. *Pierce v. State,* 109 Idaho 1018, 712 P.2d 719 (Ct.App.1985). On appeal, the trial court's finding that the petitioner has not met his burden of proof is entitled to great weight; we will not disturb such a finding unless it is clearly erroneous. *Larkin v. State,* 115 Idaho 72, 764 P.2d 439 (Ct.App.1988); I.R.C.P. 52(a).

## A

■ Cunningham first contends that the district judge improperly used a rap sheet of Cunningham's prior offenses in setting his sentence. *See* I.C.R. 32(b)(2). Cunningham asserts that the rap sheet, appended to his presentence investigation (PSI) report, contained incomplete information concerning his past offenses and that the report was not subject to independent verification. Cunningham submits that, as a matter of policy, any report of his prior criminal convictions used for the purpose of sentencing should be based only upon

certified copies of prior judgments of conviction.

Generally, a sentencing court is free to consider the results of a presentence investigation if the reliability of the information contained in the report is insured by the defendant's opportunity to present favorable evidence, to examine all the materials contained in the presentence report and to explain or rebut adverse evidence. *See State v. Creech,* 105 Idaho 362, 368, 670 P.2d 463, 469 (1983). As a predicate to this protection, the defendant bears the burden of raising objections to the report at the time of his sentencing; where no objection is made and the report substantially meets the requirements of I.C.R. 32, we will not review a challenge to its contents on appeal. *Volker v. State,* 107 Idaho 1059, 695 P.2d 809 (Ct.App.1985); *see also State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct. App.1982).

In this case, the record reveals that Cunningham failed to raise any objection to the contents of the PSI report at his sentencing hearing, nor did he raise this as an issue in the direct appeal of his conviction and sentence. *See State v. Metzgar, supra.* Furthermore, contrary to Cunningham's assertion, we do not find in I.C.R. 32 any express requirement that the summary of a defendant's criminal record contained in his or her PSI report be certified; ample protection against inaccuracies in the report is provided by the defendant's opportunity to test the reliability of the information at the time of sentencing. *See State v. Creech, supra.* Here, Cunningham did not take advantage of this safeguard. We therefore conclude that, under the circumstances existing in this case, Cunningham may not belatedly raise the reliability of the contents of the PSI report as an issue in his post-conviction relief application.[3] *Volker, supra.*

## B

■ Finally, we address Cunningham's claim that his trial attorney did not render

---

3. We further note that Cunningham has not pointed to a specific inaccuracy in the PSI report or to any resulting prejudice.

effective assistance of counsel. Cunningham contends that his attorney's failure to investigate potentially exculpatory evidence prior to trial and his attorney's failure to adequately cross-examine Paden compromised his entitlement to competent representation in the trial proceedings. To prevail on his claims, Cunningham was required to show that his trial attorney's performance was deficient, and then to demonstrate, by a preponderance of the evidence, that he was prejudiced by his attorney's deficiency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. State,* 116 Idaho 401, 775 P.2d 1243 (Ct.App.1989). To establish a deficiency, the applicant has the burden of showing that his attorney's representation fell below an objective standard of reasonableness. *State v. Aragon,* 114 Idaho 758, 760 P.2d 1174 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for his attorney's deficient performance, the outcome of his trial would have been different. *Id.* Furthermore, strategic or tactical decisions made by trial counsel will not be second-guessed on review unless those decisions are made upon a basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *State v. Larkin,* 102 Idaho 231, 628 P.2d 1065 (1981).

### 1

■ Cunningham first contends that his attorney failed to adequately investigate the possibility that Paden's pretrial identification of Cunningham was based merely upon her knowledge of his nickname rather than upon Paden's independent ability to identify him as her assailant. Cunningham asserts that he gave his attorney a list of six individuals who matched his general description and whose nicknames were "Scooter." Cunningham submits that, had his attorney made such an investigation, he could have impeached Paden's identification testimony at trial.

We disagree. Even if we assume for the sake of discussion that the attorney could have done more on this issue, the question of prejudice remains. To establish that his attorney's performance prejudiced his case, it was Cunningham's burden to produce admissible evidence or testimony which might have effectively cast doubt upon his attorney's failure to test Paden's credibility. *See Storm v. State,* 112 Idaho 718, 720, 735 P.2d 1029, 1031 (1987). We fail to see that Cunningham met this burden. As pointed out by the judge presiding over Cunningham's post-conviction evidentiary hearing, Cunningham failed to produce any evidence to indicate that interviewing these individuals would have aided his case. Furthermore, Cunningham's trial attorney testified at the hearing that, although he had not interviewed the individuals, he did attack the identification of Cunningham by cross-examining Paden regarding the inconsistencies she made in previous statements. We therefore conclude that the district court properly found that Cunningham had failed to meet his burden.

### 2

■ Next, Cunningham submits that his attorney failed to locate a witness who would have bolstered his alibi defense. At his trial Cunningham testified that, at the time of the assault, he had been involved in a fight at a party and had suffered a possible concussion. Cunningham also stated that, after the altercation, he proceeded to a local hospital but left before being treated. He further testified that he was then driven home from the hospital by an acquaintance, Melvin Lafferty. During his evidentiary hearing Cunningham contended that, although he told his attorney of Lafferty's assistance, the attorney failed to investigate the possibility of using Lafferty as an alibi witness. Cunningham's attorney stated at the hearing that he could not remember Cunningham mentioning Lafferty as a possible witness for the alibi defense. However, a review of the original trial transcript reveals that his attorney did question Cunningham at trial regarding Lafferty's actions on the night of the assault. Cunningham asserts that his attorney's failure to pursue Lafferty's aid at trial constituted ineffective assistance of counsel.

At first blush it would appear that the attorney's failure to contact Lafferty as an alibi witness—a witness allegedly central to Cunningham's defense—would be grounds for establishing ineffective assistance of counsel. However, our review of the trial transcript reveals that, although the attorney's performance may have been deficient in this regard, it did not prejudice Cunningham's defense. At his trial, Cunningham testified that he had left the party somewhere around 9:00 p.m. on the evening in question. (Trial Transcript Vol. I, p. 153.) Cunningham further testified that when he returned to the party—somewhere around 10:00 p.m.—he became involved in a fight leading to his injuries. (Trial Transcript Vol. I, p. 154–55.) He then stated that, after he visited the hospital, he was driven home by Lafferty. (Trial Transcript Vol. I, p. 159–60.) However, both the police record and Paden's testimony at trial reveal that the assault upon her took place sometime between 7:30 and 8:30 p.m. the same evening. (Trial Transcript Vol. II, p. 2–3.) Even if Lafferty would have testified to driving Cunningham home from the hospital, that testimony would not have provided Cunningham with an alibi regarding his whereabouts at the time the assault took place. In order to prove an alibi defense, the accused must show that, at the time the crime was committed, he was at a place different from where the offense occurred. *State v. Grierson*, 95 Idaho 155, 504 P.2d 1204 (1972). In this case, Lafferty's testimony would not have established Cunningham's location at the time the assault was committed. We therefore find no prejudice resulting from the attorney's failure to call Lafferty as a witness.

### 3

Cunningham also contends that his attorney failed to seek out witnesses prior to trial who could impeach Paden's character and reputation for honesty. Todd Brownlee—an inmate whom Cunningham met while in prison—testified at the post-conviction evidentiary hearing that he was familiar with Paden's reputation for truth and honesty and that she was unpredictable and not to be trusted. Cunningham contends that his attorney's failure to seek out such witnesses constituted deficient performance and prejudiced his case.

During the evidentiary hearing, Cunningham stated that he was not introduced to Brownlee until after his trial. Based upon this admission, Brownlee's testimony must be viewed as newly discovered evidence. I.C. § 19-4901(a)(4). The test for determining whether Brownlee's testimony entitles Cunningham to relief was enunciated in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976). There, the Idaho Supreme Court stated:

A motion [for a new trial] based on newly discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*State v. Drapeau*, 97 Idaho at 691, 551 P.2d at 978. In this case, had Brownlee testified at Cunningham's trial, his statements would have done nothing more than cast doubt on Paden's credibility, which had already been attacked through cross-examination. Under these circumstances, Brownlee's testimony fails to meet the second and third requirements of the *Drapeau* test. Such evidence does not entitle Cunningham to a new trial.

Furthermore, we find no merit in Cunningham's assertion that his attorney failed to locate other individuals to impeach Paden. Cunningham has not produced the names of any other witnesses who could have testified on his behalf regarding Paden's character. Accordingly, Cunningham has not met his burden of establishing that his attorney's failure to produce such witnesses was deficient performance or that it was prejudicial.

### 4

Finally, we address Cunningham's claim that his attorney failed to adequately contest Paden's testimony at trial. Specifi-

cally, Cunningham contends that his attorney failed to cross-examine Paden regarding her description of the vehicle driven by her assailant. Cunningham also contends that his attorney failed to contradict Paden's testimony that the gun used during the assault was stuffed underneath the backseat of the vehicle. Finally, he submits that his attorney should have produced a gun expert to establish that Paden's description of the weapon used during the assault did not match a description of a gun owned by Cunningham at the time the crime was committed.

We again disagree with Cunningham's contentions. He has not shown that the testimony of an expert witness regarding the gun would have been necessary to establish any difference between his gun and that described the victim. As to the cross-examination issue, based upon the testimony presented at the evidentiary hearing, the trial judge concluded that the attorney attempted to impeach Paden's testimony at trial and was able to point out many inconsistencies in her story. Furthermore, the trial judge also concluded that the attorney exercised some restraint in his cross-examination of Paden because of his fear of alienating the jury.

The decision whether and how to conduct cross-examination is a strategic decision within the province of the attorney; upon review, this decision should not be second-guessed unless it is made upon the basis of inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective evaluation. *State v. Larkin, supra.* In this case, Cunningham's attorney articulated a sound tactical reason for not continuing his cross-examination of Paden. It is not argued by Cunningham that his attorney's failure to continue his cross-examination of Paden was based upon any factor other than the attorney's belief that further questioning would tend to damage Cunningham's case. Under these circumstances, we conclude that the attorney's decision to discontinue his cross-examination of Paden was nothing more than a sound tactical decision within his province at the time of trial.

### III

In summary, we affirm the district court's order denying Cunningham's application for post-conviction relief. No costs awarded on appeal.

BURNETT and SWANSTROM, JJ., concur.